**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Marshall L. ZEIDMAN, Defendant-
Appellant.**

**No. 18127.**

United States Court of Appeals,
Seventh Circuit.

June 30, 1971.

Barry J. Freeman, Chicago, Ill., for defendant-appellant.

William J. Bauer, U. S. Atty., Thomas G. Dent, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., Chicago, Ill., of counsel.

Before SWYGERT, Chief Judge, and KILEY and PELL, Circuit Judges.

PELL, Circuit Judge.

At the conclusion of a bench trial, Marshall L. Zeidman was convicted on Counts III and IV of a four count indictment.[1] Imposition of sentence was suspended and defendant was placed on probation for a period of two years, with the conditions that he pay a fine of $250 on each of Counts III and IV and that he should not receive, possess or transport a firearm.

Count III charged Zeidman with knowingly and unlawfully receiving and possessing a certain firearm, to wit, a 9 millimeter Browning semi-automatic pistol with detachable shoulder stock, serial number 33952, which was not then registered to him in the National Firearms Registration and Transfer Record as required by 26 U.S.C. § 5841, in violation of 26 U.S.C. § 5861(d).

Count IV charged defendant with knowingly and unlawfully engaging in the business of dealing in firearms without being a licensed dealer under the provision of 18 U.S.C. § 923, in violation of 18 U.S.C. § 922(a) (1).

Edward L. Conroy, an investigator with the United States Treasury Department, Alcohol, Tobacco and Firearms Division, had talked to Zeidman during the first week of January 1969, professing an interest in purchasing certain types of firearms, particularly automatic weapons. Specifically, Conroy indicated that he had obtained a list of machine guns and other firearms which the defendant was supposedly offering for sale. Defendant told Conroy that he had gotten rid of the guns listed but mentioned that he had a 9 millimeter British Stenn machine gun and a 45 caliber Spitfire machine gun for sale. Expressing an interest in both weapons, Conroy arranged a meeting with the defendant at the latter's office on January 11, 1969.

Pursuant to their arrangement, Conroy went to Zeidman's office where he was shown the two guns by the defendant. Later at this meeting the defendant produced a 7.65 Browning semi-automatic pistol along with an 8 millimeter Mauser rifle, asking Conroy if he would like to purchase either. Conroy finally purchased the British Stenn machine gun, the 45 caliber Spitfire machine gun and the Browning semi-automatic pistol for a total of $345.

The two men then discussed the possibility of similar future transactions. Zeidman told Conroy that he had a fully operable German Schmeiser 9 millimeter MP–40 machine gun and a 9 millimeter Browning high powered pistol with a detachable shoulder stock, both of which could be purchased for the right price. They arranged to meet later that evening at defendant's residence.

Upon arriving at Zeidman's apartment, Conroy was shown the MP–40 Schmeiser machine gun, following which defendant produced the 9 millimeter Browning semi-automatic pistol with the

---

1. Counts I and II each alleged that defendant knowingly and unlawfully transferred a certain firearm without obtaining the prior approval of the Secretary of the Treasury or his delegate as required by 26 U.S.C. § 5812(a), in violation of 26 U.S.C. § 5861(e).

detachable shoulder stock. Conroy removed the pistol from the wooden convertible holster-shoulder stock and affixed the shoulder stock to the back of the pistol. Conroy testified that, in his opinion, when so assembled the Browning instrument constituted a short barreled rifle. As such it would be required to be registered under 26 U.S.C. § 5841. Before leaving, Conroy agreed to return to defendant's residence the following Tuesday with money to purchase the machine gun and pistol with detachable shoulder stock.

On January 13, at approximately 4:30 p. m., three special investigators for the Alcohol, Tobacco and Firearms Division, pursuant to a federal search warrant, went to Zeidman's residence, where they were admitted by his wife after identifying themselves and their purpose. During the course of the ensuing search, the investigators seized the Browning pistol and detachable holster-shoulder stock, which became the basis of Count III of the indictment. Defendant was arrested that same afternoon in his office and two guns were there seized.

## COUNT III

Defendant raises two contentions on this appeal with respect to the conviction under Count III. He first argues that the court below erred in failing to suppress Government's Exhibit 4, the Browning pistol and detachable shoulder stock, since this exhibit was the result of an improper seizure in violation of his Fourth Amendment rights. Secondly, defendant maintains that the pistol and convertible holster-shoulder stock did not fall within the statutory definition of "firearm" on the date seized.

The search warrant, issued January 13, 1969, ordered the special investigators to search Zeidman's apartment for a "9MM Schmeisser, Model MP 40, Machine Pistol, bearing Serial No. 7000 * * *." No mention was made in the warrant of the Browning pistol and shoulder stock, notwithstanding that Zeidman had allegedly shown these two items to investigator Conroy on January 11.

During the course of the search, the Browning semi-automatic pistol and the detachable holster-shoulder stock were found in different drawers of the same dresser. Recognizing the interrelationship of the two, the investigators attached the pistol to the stock and determined that this was the short barreled rifle which defendant had offered to Conroy for sale. They therefore seized the pistol and convertible holster-shoulder stock, which subsequently were used as evidence in obtaining the conviction under Count III.

The specific purpose of the warrant was to search for an unlawful firearm. In the course of the legitimate search, the investigators, although never finding the warrant-specified firearm, did discover the pistol and holster-shoulder stock in close proximity.

When viewed together, the interrelationship of these two items is apparent, even without prior knowledge of their connection. The pistol fits snugly into the butt end of the shoulder stock. With the end closed the stock operates both as a holster and as a means to conceal the weapon. Furthermore, fixtures on the tapered end of the stock allow the pistol to be securely attached thereto. This being accomplished, the resulting unit for all practical purposes becomes a rifle.

Once the two parts are attached in rifle form, it becomes clear that the single unit fits the definition of a short barreled rifle. 26 U.S.C. § 5845(c); see 18 U.S.C. § 921(a) (8). As such, it is a "firearm" which is required to be registered under the federal statute. 26 U.S.C. § 5841. Thus, as the Government contends, the investigators had probable cause to believe its possession by defendant unlawful. 26 U.S.C. § 5861(d). Since the investigators were searching within the limits of the warrant, namely, those areas where the machine gun specified in the search warrant could have been concealed, their seizure of the unspecified short barreled rifle, which obviously was required to be registered under the federal statute, was proper.

The Supreme Court in Harris v. United States, 331 U.S. 145, 154, 67 S.Ct. 1098, 1103, 91 L.Ed. 1399 (1947), specified that the objects which might be validly seized included "the instrumentalities and means by which a crime is committed, the fruits of crime such as stolen property, weapons by which escape of the person arrested might be effected, *and property the possession of which is a crime.*" (Emphasis supplied and footnote omitted.) *See also* United States v. Teller, 397 F.2d 494 (7th Cir. 1968), cert. denied 393 U.S. 937, 89 S.Ct. 299, 21 L.Ed.2d 273.

It is true that the Supreme Court in Chimel v. California, 395 U.S. 752, 768, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), stated that the principles for which *Harris* stands are no longer to be followed. However, the search involved in the case before us occurred on January 13, 1969 and *Chimel* was decided on June 23, 1969. *Chimel* has been held not to be retroactive in its application. Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971). Even if *Chimel* had been retroactive we are of the opinion that the guidelines of *Harris* applicable to the facts of the case before us still have viability. The thrust of *Chimel* was to impose a reasonable limitation on the physical scope of a search incident to arrest to the accomplishment of the lawful goals which justified its inception but *Chimel* does not limit the permissible evidentiary scope of the seizure items discovered while acting within the proper confines of the search.

In the case before us we do not have a situation where the officers were going out of the area prescribed or into an area proscribed by *Chimel.* A search warrant was regularly and properly issued and with specificity set forth the area to be searched in the apartment of Zeidman. This was not a rummaging or general exploratory search as the officers were still seeking the specified "Machine Pistol" at the time the weapon, which in our opinion was illegally possessed, was found. While a search must be reasonable under the Fourth Amendment, there were no aspects of unreasonableness in the search presently involved. The narrow question we have here is when a lawful and reasonable search is involved, what objects may be validly seized. We do not find either the search or the seizure unreasonable under the Fourth Amendment.

Zeidman also advances the contention, which we find without any real merit, that before the investigators could seize the rifle they must ascertain whether or not it was properly registered to the defendant. The theory here apparently was that since the investigators could not have known at the time of the seizure that the gun might not have been properly registered, they could not have known that the possession was illegal. However, this point, which seems to be somewhat in the nature of an afterthought by Zeidman, if accepted would virtually preclude the lawful seizure of any property, the possession of which would ordinarily be illegal, because the possessor theoretically could somehow have become legally entitled to hold possession even between the time of the issuance of the search warrant and the actual search. The search warrant issued on probable cause was predicated on Zeidman having a firearm, the possession of which was illegal, and there was ample probable cause on the facts of this case for the officers to be of the opinion that the seized firearm was not legally possessed by Zeidman.

## COUNT IV

Defendant contends that the evidence is insufficient to support a conviction under this count. Rather than engaging in the business of dealing in firearms, Zeidman maintains that his hobby had been collecting firearms and that the sales involved here simply constituted the final disposition of his collection. He argues that there has been no showing of a continuing nature of activity which is impliedly required by the language "engage in the business of * * * dealing in firearms * * *." 18 U.S.C. § 922(a) (1).

A "dealer" is defined as "any person engaged in the business of selling firearms * * * at wholesale or retail,

\* \* \* " 18 U.S.C. § 921(a) (11). The statute does not prescribe any standards for determining when a person is "engaged in the business."

The Government presented evidence at the trial of six separate weapons which the defendant either sold or offered for sale. As to one of these, there was testimony that defendant had acquired it, sold it, reacquired it, and was now again offering it for sale.

The defendant had a federal firearms license which expired in September 1968, approximately four months before his arrest. He uses this fact as an argument in his behalf, stating that his allowing the license to lapse was indicative of his ceasing to be engaged in the business of dealing; any subsequent sales would merely be disposing of his private collection which had no relation to the business of dealing in firearms. In this vein, the fact that defendant had once circulated a list of guns he was offering for sale assertedly is of no probative value because there is no proof that this occurred after his license had expired.

 We must consider the evidence on an appeal from a criminal conviction in the light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Garelli, 333 F.2d 649, 650 (7th Cir. 1964), cert. denied 380 U.S. 917, 85 S.Ct. 904, 13 L. Ed.2d 801 (1965). In view of the evidence as to the six different weapons, we are not able to conclude that there is not sufficient evidence to support a conviction under Count IV.

Evidence was introduced by the Government from which the trier of fact could conclude that defendant was engaged in the business of dealing in firearms and we will not here try the case de novo.

For the reasons hereinbefore set forth the judgment of conviction is affirmed.

Affirmed.

---

\* Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir. 1970, 431 F.2d 409.