**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Bernard BROWN, Defendant-Appellant.**

**No. 76–1640.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 2, 1976.

Decided Jan. 19, 1977.

Rehearing and Rehearing En Banc Denied April 7, 1977.

Richard S. Kuhlman, Stephen M. Komie, Chicago, Ill., for defendant-appellant.

Samuel K. Skinner, U.S. Atty., Jerry Frese, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before HASTINGS, Senior Circuit Judge, and SWYGERT and TONE, Circuit Judges.

TONE, Circuit Judge.

Defendant Bernard Brown was convicted of possession of an unregistered firearm (a sawed-off shotgun) in violation of 26 U.S.C. § 5861(d). On appeal, he challenges the District Court's rulings denying his motion to suppress evidence and his motion for an *in camera* examination of an unknown informant, as well as a number of rulings precluding presentation of certain defense evidence and arguments. We affirm.

In April, 1972 agent Christ W. Heart of the Alcohol, Tobacco, and Firearms Division of the Treasury Department obtained a federal warrant to search defendant's produce market in Chicago. The affidavit supporting agent Heart's request for a warrant averred (1) that he had been told by an informant, who had seen the firearm, that there was a sawed-off shotgun at the market, (2) that other agents had told him that the informant was qualified to identify the weapon, and (3) that the informant was otherwise reliable in that he had in the past helped in solving three homicides and was currently working with the Chicago police in narcotics investigations. When the warrant was executed, a sawed-off shotgun was discovered and seized. At defendant's trial he did not deny possession of the weapon, but rather sought to introduce evidence that he needed the gun for protection from the Blackstone Rangers street gang. He also sought to uncover the identity of the informant in order to prove his theory that the informant was himself a gang member, who tipped off federal agents in order to disarm the defendant and thus further the gang's extortion attempts. The District Court ruled such evidence inadmissible and refused either to examine the informant *in camera* or to compel the government to reveal his identity.

On appeal, defendant's first argument is that the sawed-off shotgun must be suppressed because the affidavit described above was defective in two respects: first, in failing to establish probable cause for believing that the shotgun was unregistered and therefore failing to allege commission of a federal offense, and second, in failing to establish a substantial basis for crediting agent Heart's report on the informant's past reliability.

In *United States v. Zeidman,* 444 F.2d 1051, 1054 (7th Cir. 1971), this court held that agents are not required to determine whether or not a weapon is registered before seizing it. The court stated that once a weapon is identified as a "firearm" required by federal law to be registered, probable cause to believe that it is illegally possessed is established. *Id.* at 1053. Defendant argues that *Zeidman* and similar cases cited by the government are distinguishable from the case at bar. In *Zeidman,* there was evidence of a large-scale gun-selling operation; in the other cases,

there was evidence of other types of criminal activity.[1] Defendant argues that, where a crime has recently been or is about to be committed and where a suspect is believed to possess a weapon such as a sawed-off shotgun, there is no time to check the records and indeed no need to do so, given the low probability that such a person would have a registered firearm. Absent these factors, however, defendant argues that there is no basis for assessing the probability that the gun is unregistered and no emergency precluding a records check that would establish such a basis. Thus, he contends, agents in the case at bar could easily have checked the National Firearms Registration and Transfer Record to determine whether there was a sawed-off shotgun registered to anyone who worked at the store before applying for a warrant.

We do not find defendant's argument persuasive. The distinguishing factors defendant points to were not relied upon by the court in *Zeidman*. Instead, the court in that case assumed that "possession of [the firearm] would ordinarily be illegal," *id.* at 1054, and therefore found that an allegation of possession would by itself establish the requisite probable cause, *id.* at 1053. As the Ninth Circuit has said, "[A] sawed-off shotgun is not an intrinsically innocent object. The possession of it is a serious crime, except under extraordinary circumstances." *Porter v. United States,* 335 F.2d 602, 607 (9th Cir. 1964), *cert. denied,* 379 U.S. 983, 85 S.Ct. 695, 13 L.Ed.2d 574 (1965). See also *United States v. Canestri,* 518 F.2d 269, 275 (2d Cir. 1975), in which the court took judicial notice of the fact that in 1972 there were fewer than 15,000 registered sawed-off shotguns in the United States, and most of them were registered to government agencies.

■ We accordingly conclude that sufficient facts were alleged to show a violation of a federal statute. Although agent Heart never explicitly identified the crime involved as "possession of an unregistered firearm," his description of it as "unlawful possession of firearms; in violation of Title 18, [sic] U.S.Code, Section 5861(d)," was sufficient to inform the magistrate of its federal character.[2]

■ The second part of defendant's suppression argument is that the affidavit was insufficient because it failed to disclose the source of agent Heart's information that the informant was "reliable in that [he] has worked for the Chicago Police Department for over two years . . . has assisted in the solving of three homicides . . . [and] is currently working with Chicago Police in solving numerous narcotic cases." Speculating that this report could have come, not from the Chicago police, but from neighborhood gossip or even from the informant himself, defendant argues that the magistrate did not have a "substantial basis" for crediting it and therefore had no basis for finding the informant reliable. *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

While we agree that the affidavit leaves much to be desired in this respect, we cannot, consistent with the rule of *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), hold it insufficient. In *Ventresca,* as in this case, an agent's affidavit contained sufficient facts to establish probable cause, but failed to state whether those facts had been reported to him by other investigators. Reading the affidavit in a "commonsense" manner, the Court rejected the argument that the affidavit could have been based on the observations of totally anonymous sources. A

---

1. See *United States v. Freeman,* 532 F.2d 1098 (7th Cir. 1976); *United States v. Canestri,* 518 F.2d 269 (2d Cir. 1975); *United States v. Cecil,* 457 F.2d 1178 (8th Cir. 1972); *Porter v. United States,* 335 F.2d 602 (9th Cir. 1964), *cert. denied,* 379 U.S. 983, 85 S.Ct. 695, 13 L.Ed.2d 574 (1965).

2. We find no merit in defendant's argument that the agent's error in citing to the wrong title of the code (and the magistrate's duplication of that error in the warrant) rendered it invalid. In the commonsense reading of the affidavit which *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), requires, technicalities such as this should not be controlling.

number of factors were cited in support of this conclusion, including the failure of the affiant to mention any such unknown sources and his use in several instances of explicit references to the actions and observations of other agents.

In this case as well there is nothing on the face of the affidavit to indicate reliance by the affiant on an unofficial source to verify the informant's past record. Moreover, it seems unlikely that agent Heart would properly check out his informant's credentials with respect to firearms identification, but fail to do so with respect to his past reliability. Given these factors and the principle that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants," *United States v. Ventresca, supra,* 380 U.S. at 109, 85 S.Ct. at 746, we cannot find the affidavit in this case insufficient.

We add that, *Ventresca* aside, we would be compelled by this court's *en banc* decision in *United States v. Carmichael,* 489 F.2d 983 (7th Cir. 1973), to hold the affidavit sufficient. In *Carmichael,* the court held an unattributed statement that information given by the informant "in the past ha[d] led to the conviction of at least six people" sufficient to establish the informant's reliability. *Id.* at 984, 986. The statement in this case, while equally vague as to its source, provides more detail about the informant's record than the statement in *Carmichael* and thus, under the authority of that case, is necessarily sufficient to establish the informant's reliability.

■ Questions such as the one we have just decided would not arise if judicial officers considering requests for warrants would properly exercise their authority un-der Rule 41(c), Fed.R.Crim.P., which provides in part:

> "Before ruling on a request for a warrant the federal magistrate or state judge may require the affiant to appear personally and may examine under oath the affiant and any witnesses he may produce, provided that such proceeding shall be taken down by a court reporter or recording equipment and made part of the affidavit."

If an affidavit presented to a federal magistrate contains ambiguities or leaves uncertainties concerning any material matter, he should not simply rely on the *Ventresca* rule but should use the authority given him by the quoted passage to clarify the matter. It would, of course, aid the administration of justice and law enforcement if the same procedure were observed for warrant requests to state judges, over whom we have no supervisory authority.

Defendant's next contention is that the District Court erred in refusing either to hold an *in camera* examination of the informant or to compel the government to reveal his identity. The defendant and the government agree that there was error only if "the disclosure of [the] informer's identity . . . [would have been] relevant and helpful to the defense of [the] accused, or [would have been] essential to a fair determination of [the] cause." *Roviaro v. United States,* 353 U.S. 53, 60, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957).

■ Defendant argues that the identity of the informant would have been relevant under either of two theories.[3] First, he hypothesizes that the Blackstone Rangers may have coerced the transferor of the weapon into failing to register the transac-

---

**3.** Defendant also argues that the informant should have been produced because he was a witness to the crime and because his statement to agent Heart was the sole basis for probable cause. The first of these arguments is clearly without merit because the crime charged, possession, was not proved by the testimony of the informer; possession was in fact admitted. Defendant's second argument would have been well-taken if there had been no search warrant. See *United States v. Hurse,* 453 F.2d 128 (8th Cir. 1972). Where there is a warrant, however, the court will not inquire into the truth of an informant's statement; at a suppression hearing, only the truth of the affiant's statement could be challenged. *United States v. Carmichael, supra,* 489 F.2d at 989. As we stated above, the affidavit in this case was facially sufficient, and, under the standards set forth in *Carmichael,* defendant did not make the kind of showing that would entitle him to a hearing.

tion and then may have themselves informed on the defendant-transferee to federal agents. Because the informant became, in effect, a government agent when his information was relied upon, defendant argues that this sequence of events would constitute entrapment. Second, even if there was no coercion of the transferor, defendant theorizes that, when the gang discovered that he had obtained a gun to protect himself, they informed on him in order to disarm him. If this scenario were accurate, defendant argues, the prosecution in this case would be in furtherance of the gang's extortion attempts and, as such, would be a violation of the due process clause's guarantee of fundamental fairness.

■ As the District Court ruled, defendant's theories, even if true, would not constitute a defense to the charge of possession. The court noted that, under the statutory scheme approved by the Supreme Court in *United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 256 (1971), "The transferee [of the firearm] must assume responsibility for ascertaining that he is authorized to take possession." The transferee may therefore be held criminally liable if he takes possession of the weapon before receiving official approval of the registration; this liability attaches regardless of the motives of either party to the transaction. Thus, it is irrelevant what the transferor did or why he did it or why the transferee wanted the gun. Good intentions or ignorance of the law do not excuse the transferee's failure to determine whether the weapon was properly registered before taking possession of it. 401 U.S. at 609, 91 S.Ct. 1112.

■ This result is not altered by defendant's allegations of government involvement in the Blackstone Rangers' extortion plot. Under defendant's own theory, that involvement was limited to the receipt of an unsolicited tip—after the defendant had already taken possession of the gun and thus after the crime had been completed. This type of minimal contact is not a sufficient basis for attributing the informant's previous actions to the government. See *Sherman v. United States,* 356 U.S. 369, 373, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). Thus, defendant's argument comes down to the contention that, under the circumstances, it was fundamentally unfair for the government to prosecute this case. This argument, however, is based on the erroneous assumption that the defendant was powerless to avoid committing the crime. Assuming that defendant needed a weapon for self-protection, he could have obtained one that was not subject to federal registration statutes or one that was registered in compliance with those statutes. The fact that he did not do so and that his enemies, for reasons of their own, reported him to federal agents does not make the conduct of those agents in searching his premises and arresting him "so outrageous that due process principles . . . absolutely bar the government from invoking judicial processes to obtain a conviction." *United States v. Russell,* 411 U.S. 423, 431–432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 1046 (1973).

■ Given our conclusion that the defendant's motive in acquiring the gun was not relevant to a determination of the possession charge, it necessarily follows that the District Court was correct in excluding from the jury's consideration all mention of that motive. Defendant nevertheless argues that he should not have been precluded on these grounds from presenting the jury with a complete explanation of his statement to federal agents admitting possession of the gun. At trial, only that admission and not the accompanying explanation that the gun was needed for protection was allowed in. Defendant argues that it was fundamentally unfair to permit introduction of such a "truncated confession." [4] That argument, however, is fore-

---

4. Defendant also argues that exclusion of the statement was error because it deprived the jury of evidence relevant to the voluntariness of the confession. Voluntariness was not, however, an issue at trial, and, even if it had been, petitioner would not have been prejudiced by the exclusion. On the contrary, a bare admission of possession would seem less likely to have been voluntary than an admission coupled with an explanation.

closed by this court's decision in *United States v. McCorkle*, 511 F.2d 482, 487 (7th Cir.), *cert. denied*, 423 U.S. 826, 96 S.Ct. 43, 46 L.Ed.2d 43 (1975). In that case, defendant had admitted to investigators his failure to file income tax returns and had offered them a number of explanations for that failure—all of which were irrelevant to a determination of the tax evasion charge. Because these explanations did not qualify or explain defendant's admission in any relevant way, the court held them properly excluded. The same analysis applies to the case at bar. Defendant's explanation was wholly irrelevant in itself and, in the context of the entire statement, was unnecessary to a fair reporting of the admission of possession.

Defendant's final argument is that the District Court abused its discretion in curtailing counsel's closing argument by preventing him from (1) suggesting the possibility of jury nullification by quoting from *United States v. Spock*, 416 F.2d 165, 182 (1st Cir. 1969), on the historical role of the jury as "the conscience of the community," (2) pointing out, for a second time, that only the transferor could have registered the weapon, and (3) presenting his interpretation of the government's Firearms Registration Certificate.

 We find no merit in defendant's arguments. First, reading the passage from the *Spock* opinion would have been an invitation to the jury to disregard the instructions of the court; as such, it was clearly improper. Second, it was irrelevant that only the transferor could have registered the transaction. Once again, defendant was attempting to make the argument, rejected above, that he was helpless to avoid committing the crime. Third, defense counsel's interpretation of the certificate, which stated that a records check had been made and that no sawed-off shotgun was or had been registered to the defendant, was

apparently erroneous. He attempted to argue that the certificate, which was dated in 1976, applied only to the present and not to 1972 when the offense was allegedly committed. The trial judge, after the jury had retired, characterized this interpretation as so "egregious" that it amounted to a "misrepresentation." While the certificate itself did not come up on appeal, the portion of it that is quoted in the record indicates that the court's reading of the document was correct. Therefore, there was no abuse of discretion in the court's correction of counsel's erroneous interpretation.

For the foregoing reasons, the defendant's conviction is affirmed.

AFFIRMED.

SWYGERT, Circuit Judge, concurring.

With reluctance I concur. Upon reflection, I suppose we can assume that the hearsay information added to agent Heart's affidavit for the purpose of supporting the informant's credibility did not come from street gossip or from the informant himself.* For myself, that assumption is made with extreme hesitancy. Unfortunately, we are asked to make it simply because the magistrate who issued the warrant did not perform his job properly.

I am fully in accord with that part of Judge Tone's opinion which relates to the duty of magistrates. Magistrates should exercise independent and discreet judgment in ruling on the sufficiency of applications for warrants. They should not allow themselves to be rubber stamps. If the issuance of warrants becomes a merely pro forma ceremony, the Fourth Amendment loses much of its vitality as a bulwark against the invasion of privacy. Neither trial nor appellate courts should be required to strain to find reasons to validate search warrants based on affidavits in which the establishment of probable cause is at best ambigu-

---

* Although I believe both *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), and *United States v. Carmichael*, 489 F.2d 983 (7th Cir. 1973), cited by Judge Tone in his opinion, can be distinguished from the present case on their facts so as to make them inapposite, I choose not to attempt the analysis. My concurrence is based upon a conscientious "hunch" that agent Heart's information about the informant came from other law enforcement officials.

ous. Such straining produces an additional vice. Each instance in which courts do accept the approval by magistrates of search warrants of dubious validity encourages enforcement officials to narrow the boundaries set by the constitutional prohibition against unreasonable searches and seizures, further weakening the effective force of that prohibition.

I wish to add that the criticism I have voiced is not meant to apply to the many magistrates who do perform their duties properly.