UNITED STATES of America, Plaintiff-Appellee,

v.

Fahmi A. KHATIB, Defendant-Appellant.

No. 82–1948.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 10, 1982.

Decided April 25, 1983.

James A. Walrath, Shellow, Shellow & Glynn, Milwaukee, Wis., for defendant-appellant.

Patricia J. Gorence, Asst. U.S. Atty., Michael J. Trost, U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before WOOD and ESCHBACH, Circuit Judges, BARTELS, Senior District Judge.*

ESCHBACH, Circuit Judge.

Fahmi A. Khatib appeals from conviction on three counts of unlawfully acquiring and possessing food stamps in violation of 7 U.S.C. § 2024(b), one count of conspiring to unlawfully receive and possess firearms in violation of 26 U.S.C. § 5861, and two counts of receiving and possessing a firearm that was not registered with the National Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d). For the reasons below, we affirm.

---

* The Honorable John R. Bartels, Senior District Judge of the United States District Court for the Eastern District of New York, is sitting by designation.

## I

The facts of this case are essentially undisputed. The events giving rise to these criminal charges were observed by, and in some cases, electronically recorded by, federal officials.

Agent Humberto Flores of the Department of Agriculture made several "familiarization visits" with Mahmoud Salah at the Corner Food Store in Racine, Wisconsin in November of 1981. After thus becoming acquainted with Salah, Agent Flores offered to sell Salah some food stamps on November 19, 1981. Salah said that he did not have enough money, but offered to call a friend who might be interested. Salah phoned someone referred to as "Sam" and talked with him in a foreign language. Through Salah, Agent Flores and "Sam" made offers and counteroffers, but could not agree on a price for the food stamps.

On November 24, 1981, Agent Flores again met with Salah at the Corner Food Store. After Agent Flores showed Salah approximately $3,000 worth of food stamps, Salah unsuccessfully attempted to call "Sam." Salah then told Agent Flores that the person he was trying to contact was interested in buying silencers. Agent Flores informed Salah that possessing silencers was illegal, but that he had a friend who may be able to help him. Salah attempted to call "Sam" again, this time successfully, and arranged for a sale of the food stamps. Agent Flores and Salah drove to Discount Foods in Milwaukee. Salah took the stamps into the store and returned with $1,500, which he divided with Agent Flores. This transaction was the basis for the first count of the indictment alleging violation of 7 U.S.C. § 2024(b).

Agent Flores arranged to meet with Salah at the Corner Food Store on December 15, 1981. Special Agent James Makar of the Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms accompanied Agent Flores. Salah called "Sam," who came to meet the agents. Both agents identified the defendant Khatib as the person they knew as Sam. Khatib bought approximately $4,000 worth of food stamps

for approximately $2,000, part of which was given to Salah as a commission. This transaction was the basis for the second count of violating 7 U.S.C. § 2024(b). Khatib asked Agent Makar about the use and mechanics of silencers. He indicated that he would be interested in buying two pistols equipped with silencers. Agent Makar arranged to contact Salah if he were successful in obtaining the weapons. Khatib also inquired into the possibility of buying video equipment by the truckload and about buying explosives.

On December 29, 1981, Special Agent Randall Rozier of the Federal Bureau of Investigation went to Discount Foods in Milwaukee and asked for Jackie or Sam. On prior occasions, he had sold food stamps to an employee named Jackie McCarthy, who had told him that if he wanted to sell more stamps and she was not there, that he should ask for "Sam." Agent Rozier sold the person introduced to him as Sam approximately $1,200 worth of food stamps for 40% of their face value. Agent Rozier identified the defendant Khatib as the person he knew as Sam. This transaction is the basis for the third count of violating 7 U.S.C. § 2024(b).

Agent Flores arranged to meet Salah and Khatib again at the Corner Food Store on January 13, 1982. This time, Agents Flores and Makar were accompanied by Special Agent Steven Lawroski of the Bureau of Alcohol, Tobacco and Firearms. Khatib discussed the sale of video equipment with Agent Lawroski, who had been introduced as someone having access to this kind of merchandise. Khatib negotiated the purchase of approximately $20,000 worth of food stamps from Agent Flores for $3,000, after which Agent Flores turned the food stamps over to Salah, who took them to another part of the building. This transaction was the basis for the fourth count of violating 7 U.S.C. § 2024(b). The attention then turned to the silencer-equipped pistols. As Khatib and Salah were going downstairs with the agents to the basement to test fire the weapons, Khatib took Agent Flores aside and asked if he knew of anyone who

would kill someone for him. Agent Flores called Agent Makar and relayed Khatib's request. Agent Makar said they could probably do business, and that they could discuss it later. In the basement, both pistols were test fired, then Agent Lawroski and Khatib discussed a possible sale of ammunition. The agents, Khatib and Salah returned upstairs, at which time Khatib agreed to pay Agent Makar $300 each for the weapons. Khatib produced the money for the food stamps and the weapons, with a commission paid to Salah. Agent Lawroski excused himself, ostensibly to get some ammunition from his car. When he returned, Khatib and Salah were placed under arrest.

Khatib was charged with four counts of unauthorized acquisition and possession of food stamps and, by a separate indictment, with one count of conspiring to receive and possess unregistered silencer-equipped pistols, and with two counts of receiving and possessing unregistered silencer-equipped pistols. After a bench trial, Khatib was found not guilty of the first count of the first indictment and guilty of the remaining charges. He was sentenced to concurrent five year terms on each count and was fined $10,000 for the food stamp charges. Khatib appeals.

## II

Khatib raises four issues on appeal. First, he claims that the convictions for possession of unregistered firearms is faulty because the government agents who delivered the weapons were under no duty to register the weapons before the transfer. Second, he argues that the agents' conduct in the firearms transactions deprived him of due process. Third, he contends that the firearms conspiracy charge is barred by application of Wharton's Rule. Finally, he claims that the food stamp charges failed to state an offense under 7 U.S.C. § 2024(b).

## III

### A. *Delivery of the Unregistered Weapons*

■ Under 26 U.S.C. § 5861(d), it is unlawful for any person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record...." Firearms which are in the possession or under the control of the United States need not be registered. 26 U.S.C. § 5841(a). It is the transferor's duty, not the transferee's, to register the firearm before transfer. *United States v. Freed,* 401 U.S. 601, 604, 91 S.Ct. 1112, 1115, 28 L.Ed.2d 356 (1971).

Khatib argues that this statutory scheme does not contemplate criminal liability unless there was an actual obligation on the part of the transferor to register the firearm. Since the government agents were under no obligation to register the weapons, Khatib contends that he cannot be convicted of receiving these unregistered firearms.

■ Khatib's argument must fail. While the transferee himself is not able to register a firearm under the act, he has an affirmative duty to ensure that the weapon is properly registered before taking possession of it. *See United States v. Freed, supra,* 401 U.S. at 604–06, 91 S.Ct. at 1115–1116; *United States v. Brown,* 548 F.2d 204, 209 (7th Cir.1977); *United States v. Mayo,* 498 F.2d 713, 717 (D.C.Cir.1974). It is no defense that the transferee was unaware of the registration requirement, *United States v. Brown, supra,* 548 F.2d at 209, that the transferee's motives or intentions were good, *id.,* or that the transferor also violated the statute by failing to register the transfer, *United States v. Mayo, supra,* 498 F.2d at 717. Khatib offers and our research discloses no authority supporting his contention that a transferee can defend himself from criminal liability by showing that the transferor happens to be under no obligation to register the firearm. In the instant case, the transferor was an agent of the United States, and the firearms he possessed were excepted from the registration requirement. The agent informed Khatib that the weapons were not registered and that possessing them would be illegal, yet Khatib willingly took possession of them. We hold that in this case the fact that the firearms were excepted from registration in

the hands of the government agent is no defense to Khatib's prosecution for receiving and possessing the unregistered firearms. *Cf. United States v. Stencil,* 629 F.2d 984, 985 (4th Cir.1980) (Fact that undercover agent was authorized to sell food stamps for money did not cloak buyer with authority to buy the stamps).

### B. *Due Process*

Khatib contends that the actions of the government agents were so outrageous that due process considerations preclude conviction on the firearms charges. He first argues that since the factor making receipt and possession of the firearms illegal—*i.e.,* nonregistration—was injected into the case by the agents, the government should be estopped from bringing criminal charges against Khatib. He also contends that the conduct of the government agents in providing the unregistered firearms to Khatib was outrageous in that it crossed the line from detecting crime to creating crime.

We find no merit in Khatib's first argument. If his ·position were accepted, no conviction could ever be based on the sale of contraband by a government agent, because the agent would have introduced the essence of the illegality into the transaction. Any time an undercover agent attempts to detect criminal activity by offering contraband for sale, that agent could frustrate the illegality of the sale by selling non-contraband instead, or by simply declining to complete the transaction. This, of course, would also frustrate the purpose of the undercover operation. A majority of the Supreme Court has rejected a per se rule requiring acquittal if a government agent supplied the contraband that the defendant was later accused of selling. *Hampton v. United States,* 425 U.S. 484, 489–91, 96 S.Ct. 1646, 1649–1650, 48 L.Ed.2d 113 (1976); *id.* at 491–92, 96 S.Ct. at 1650–1651 (Powell, J., concurring in the judgment). Convictions based on sales of contraband by government agents have been widely upheld. *E.g., United States v. Gianni,* 678 F.2d 956 (11th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 491, 74 L.Ed.2d 633

(1982) (sale of marijuana); *United States v. Parisi,* 674 F.2d 126, 127 (1st Cir.1982) (sale of food stamps); *United States v. McCaghren,* 666 F.2d 1227, 1230–31 (8th Cir.1981) (sale of marijuana); *United States v. Stencil,* 629 F.2d 984, 985 (4th Cir.1980) (sale of food stamps); *United States v. Garrett,* 583 F.2d 1381, 1390–91 (5th Cir.1978) (sale of firearms). We hold that under the facts of this case the government's action in providing unregistered firearms was not a per se violation of Khatib's due process rights.

Khatib, however, argues that, even in the absence of a per se rule, the government's actions *in this case* were so outrageous that his due process rights were infringed. At trial, Khatib attempted to raise an entrapment defense, which the district court rejected. The uncontroverted evidence established that Khatib was predisposed to buy food stamps and firearms illegally; in fact, the evidence shows that it was Khatib, through Salah, who initiated the firearms negotiations. Having found Khatib predisposed to commit these crimes, the district court properly rejected his entrapment defense. *See United States v. Russell,* 411 U.S. 423, 429, 93 S.Ct. 1637, 1641, 36 L.Ed.2d 366 (1973); *United States v. Sorrells,* 287 U.S. 435, 451, 53 S.Ct. 210, 216, 77 L.Ed. 413 (1932). On appeal Khatib has abandoned his attempt to establish entrapment, but he renews his argument, also advanced at trial, that the government's conduct was outrageous and violative of due process.

In *United States v. Russell, supra,* 411 U.S. at 431–32, 93 S.Ct. at 1642–1643, the Supreme Court held open the possibility that there may be situations in which "the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." The Supreme Court has since established that, whatever the contours of this due process bar may be, it does not include the government's selling of contraband to one predisposed to buy it. *Hampton v. United States,* 425 U.S. 484, 489–91, 96 S.Ct. 1646, 1649–1650, 48 L.Ed.2d 113 (1976); *id.* at 491–92, 96 S.Ct. at 1650–1651

(Powell, J. concurring in the judgment); *see United States v. Duff,* 551 F.2d 187, 188–89 (7th Cir.1977). In the instant case, there has been a straightforward sale of contraband weapons to one predisposed, indeed eager, to buy them. This is far from the outrageous conduct contemplated by *Russell* that would bar prosecution of the offenses. *Cf. United States v. Twigg,* 588 F.2d 373 (3rd Cir.1978) (due process precluded conviction where government agents suggested setting up drug lab, provided location, supplies and expertise, and ran operation). Khatib's due process rights have not been violated by the government's actions.

### C. *Wharton's Rule*

█ Wharton's Rule is a doctrine that, in certain limited circumstances, precludes punishing a person for both conspiracy and the completed substantive offense. It is an exception to the general principle that a conspiracy does not merge with the completed substantive offense. *Iannelli v. United States,* 420 U.S. 770, 781–82, 95 S.Ct. 1284, 1291–1292, 43 L.Ed.2d 616 (1975); *United States v. Rone,* 598 F.2d 564, 569 (9th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980). It applies when the substantive offense requires the participation of the same persons charged with the conspiracy. *United States v. Previte,* 648 F.2d 73, 76 (1st Cir.1981); *see Iannelli v. United States, supra,* 420 U.S. at 783–84, 95 S.Ct. at 1292–1293. Since conspiracy of two persons to commit a crime that requires the participation of those same two persons is analogous to an individual attempt to commit an individual offense, *United States v. Hunter,* 478 F.2d 1019, 1024 (7th Cir.), *cert. denied,* 414 U.S. 857, 94 S.Ct. 162, 38 L.Ed.2d 107 (1973), it is presumed, in the absence of any indication to the contrary, that the legislature does not intend separate punishment for both the conspiracy and the completed substantive crime, *Iannelli v. United States, supra,* 420 U.S. at 785–86, 95 S.Ct. at 1293–1294.

█ Wharton's Rule would arguably apply if Khatib, as transferee of the contraband weapons, had been charged with con-spiring with the transferor. *See Baker v. United States,* 393 F.2d 604, 610 (9th Cir.), *cert. denied,* 393 U.S. 836, 89 S.Ct. 110, 21 L.Ed.2d 106 (1968). However, he is charged with conspiring with Salah, whose role was not that of transferor, but merely facilitator of the transfer. While the underlying substantive offense may require the participation of both a transferor and a transferee, it is obvious that receipt and possession of the firearms did not require the mediating activities of Salah. When a conspiracy contemplates the cooperation of a greater number of persons than necessary for commission of the substantive offense, one may be convicted of both conspiracy and the substantive offense. *United States v. Benter,* 457 F.2d 1174, 1178 (2d Cir.), *cert. denied,* 409 U.S. 842, 93 S.Ct. 41, 34 L.Ed.2d 82 (1972); *Baker v. United States, supra,* 393 F.2d at 610; *see Gebardi v. United States,* 287 U.S. 112, 122 n. 6, 53 S.Ct. 358, 359 n. 6, 77 L.Ed. 206 (1932). Because Khatib's receipt and possession of the weapons did not require the participation of Salah, Wharton's Rule does not preclude separate conviction and punishment for conspiring with Salah to commit the substantive offense.

### D. *The Food Stamp Charges*

█ Khatib was convicted of three counts of violating 7 U.S.C. § 2024(b)(1), which provides in pertinent part: "whoever knowingly uses, transfers, acquires, alters, or possesses coupons [*i.e.* food stamps] . . . in any manner not authorized by this chapter or the regulations issued pursuant to this chapter, shall, if such coupons . . . are of a value of $100 or more, be guilty of a felony . . . ." Khatib argues that this section applies only to those members of households receiving food stamps pursuant to the food stamp program, and that the purpose of this section is to deter such persons from using the stamps to purchase non-food items in violation of 7 U.S.C. § 2013(a). Khatib offers and our research discloses no authority for this restrictive interpretation. The language of the statute is not restrictive. Indeed, if this section

were meant only to penalize misuse of coupons in the hands of qualified program participants, there would be little sense in specifically making unauthorized *acquisition* a violation. We reject Khatib's contention that persons who are not participants in the food stamp program are excluded from the provisions of 7 U.S.C. § 2024(b). *Cf. United States v. Fields,* 689 F.2d 122 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 573, 74 L.Ed.2d 935 (1982) (affirming conviction of non-participant).

### IV

For the reasons above, the convictions appealed from are affirmed.