**UNITED STATES of America, Plaintiff,**

v.

**Terry Gene BROOM, Defendant.**

**No. 90–CR–128.**

United States District Court,
D. Colorado.

Aug. 10, 1990.

Joseph Mackey, Asst. U.S. Atty., Denver, Colo., for plaintiff.

Lee D. Foreman, Denver, Colo., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

BABCOCK, District Judge.

Hearing on defendant, Terry Gene Broom's (Broom), motion to suppress evidence was held July 23, 1990. Having heard the evidence presented and counsels' arguments, and upon the following findings of fact and conclusions of law, I deny Broom's motion.

In June 1989, Alcohol Tobacco and Firearms (ATF) Special Agent William G. Frangis (Agent Frangis), received information from a previously reliable confidential informant, Bill Sivils (Sivils), that Broom offered to sell him a machinegun. On July

17, 1989, Sivils placed a telephone call to Broom. Broom agreed to sell him the gun the following day and on July 18, 1989, Sivils met with Broom at Broom's residence in Grand Junction, Colorado. Sivils observed Broom install M–2 conversion parts into a National Postal Meter, model US, 30 caliber carbine, serial number 1548890. After the firearm was converted, they took the machinegun to a rural area and test-fired it. They then returned to Broom's residence and Sivils bought the machinegun for $300. Sivils also observed Broom convert a second M1 carbine.

On July 20, 1989, Broom called Sivils and told him that the second M1 carbine machinegun fired in "full-auto". Broom also stated that he was going to obtain two .223 caliber machineguns from an individual named James Kliesen (Kliesen) in Cheyenne Wells, Colorado.

On September 24, 1989, Broom and Sivils drove to Kliesen's farm in Cheyenne Wells. Broom traded several firearms to Kliesen in exchange for an AR–15, .223 caliber machinegun, additional parts, and lower receiver for a second machinegun. Broom and Sivils test-fired the machinegun before buying it.

On October 27, 1989, Agent Frangis, undercover and accompanied by Sivils, met with Kliesen. While Agent Frangis and Sivils were purchasing machineguns, Kliesen stated that he had sold Broom a machinegun.

Broom and Sivils fired the machinegun Broom had purchased from Kliesen over the weekend of December 30, 1989. Sivils again saw this machinegun at Broom's residence on January 8, 1990.

No firearms were registered to Broom.

Based upon this information, on January 10, 1990 Agent Frangis obtained an arrest warrant for Broom's arrest and a search warrant for his residence. The next day, between 6:30 and 7:00 a.m., ATF Special Agent Robert Glenn (Agent Glenn) and three policemen from the Grand Junction police department executed the arrest warrant by taking Broom into custody at his residence. The officers then searched Broom's residence pursuant to the search warrant.

The search warrant authorized the seizure of certain items, namely:

machine guns, machine gun component parts, and any documentation showing receipt or possession thereof or showing ownership or occupancy of the premises.

During the course of the search, Agent Glenn saw in plain view an Olympic Arms rifle, model CAR–AR, serial number F 1980, .225 cal., with an attached "flash suppressor." The barrel, without the flash suppressor, appeared to be less than 16″ in length. Because he was not sure whether the "flash suppressor" was permanently affixed to the rifle, he seized the firearm for testing.

Agent Glenn also observed in plain view a Saginaw rifle, model U.S. Carbine M–1, .30 cal., SN: 3540455, with "parts". Thinking that Mr. Broom may have attempted alterations to convert this rifle into a machinegun, Agent Glenn seized the rifle and parts for testing.

Testing proved the "flash suppressor" to be permanently affixed to the Olympic Arms rifle, making its barrel length more than 16 inches, and thus, a legal firearm. Similarly, testing proved that neither the Saginaw rifle alone nor with the parts seized was an illegal machinegun.

During the course of the search, the officers also discovered in plain view and seized the following items:

1. a book entitled "The AK–47 Assault Rifle;"
2. a 13 page manual on the M–16A1;
3. a book entitled "The Ruger 1022 Exotic Weapons System;" and
4. some marijuana.

Mr. Broom does not contest the facial validity of the search warrant or the seizure of item 4. Rather, he contends that the other items seized were obtained pursuant a warrantless seizure because the weapons are legal and none of the items were specified in the search warrant. Thus, he asserts that this seizure exceeded the scope of the search warrant. Mr. Broom argues that it was unreasonable to

576

seize the weapons and books because it was not "immediately apparent" to the law enforcement officers that the items were illegal. I disagree.

■ To justify a warrantless seizure: 1) the item seized must be in plain view; 2) its incriminating character must be immediately apparent; 3) the officer must be lawfully located in a place from which the object can be seen plainly; and 4) the officer must have a lawful right of access to the object itself. *Horton v. California,* — U.S. ——, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990). These standards are judged by "objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer." *Id.* 110 S.Ct. at p. 2308–2309. Only the standard of immediate apparency is in issue here.

In *Illinois v. Rodriguez,* — U.S. ——, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), the United States Supreme Court held that a warrantless entry is valid when it is based on the consent of a third party whom the police, at the time of the entry, reasonably believe to possess common authority over the premises, but who in fact does not. Under the Fourth Amendment, the Court reasoned that, as with other factual determinations regularly made by government agents when conducting searches and seizures, the determination of consent to enter must be judged not by whether the police ultimately were correct in their assessment, but by an objective standard of reasonableness. The Court stated:

> It is apparent that in order to satisfy the 'reasonableness' requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the govermnent—whether the magistrate issuing a warrant, the police officer executing a warrant, or the police officer conducting a search or seizure under one of the exceptions to the warrant requirement—is not that they always be correct, but that they always be *reasonable.*

*Id* at ——, 110 S.Ct. at 2805 (Emphasis added).

■ Applying these principles to this case, I conclude that although the items seized did not ultimately prove to be contraband per se, a reasonable officer executing the search warrant under the circumstances shown here would deem the incriminating character of the items seized "immediately apparent." In short, their seizure was objectively reasonable.

The seizures occurred during a lawful search authorized by a valid warrant. The items were discovered in plain view and their character was directly related to the subject of the investigation generally and the subject of the warrant specifically.

The search warrant authorized the officers to seize machineguns and machinegun parts. The Olympic Arms rifle clearly was not a machinegun or machinegun part. A reasonable officer, however, could believe it to be an illegal firearm because of its barrel length. The Olympic Arms rifle ultimately proved to have a barrel length of more than 16 inches because in the lab it was determined that the "flash suppressor" was permanently affixed to the barrel. *See* 26 U.S.C. § 5845(a)(3). Although the officer here ultimately was incorrect in his assessment, under the circumstances then apparent, I conclude that its seizure was objectively reasonable.

Likewise, although the Saginaw M–1 Carbine and parts later proved to be legal, it was objectively reasonable for the officers to seize these items. A reasonable officer under the circumstances could have been unsure whether it was a machinegun, *see* 26 U.S.C. § 5845(b) (definition of machinegun), but believe Broom may have attempted alterations to the rifle to convert it to a machinegun. Accordingly, it was reasonable to seize these items pursuant to the warrant for testing.

The search warrant also authorized the agents to seize "any documentation showing receipt or possession [of machineguns or machinegun component parts]." Review of these documents leads me to conclude that under the circumstances then apparent, it was objectively reasonable to believe that these documents were incriminating and, thus, their seizure was lawful.

Accordingly, IT IS

ORDERED that defendant's Motion to Suppress is Denied.