UNITED STATES of America, Plaintiff-Appellee,

v.

Jason Christopher KENT, Defendant-Appellant.

No. 97-8425.

United States Court of Appeals,

Eleventh Circuit.

May 4, 1999.

Appeal from the United States District Court for the Southern District of Georgia. (No. CR496-148), B. Avant Edenfield, Judge.

Before ANDERSON and HULL, Circuit Judges, and HANCOCK[*], Senior District Judge.

HULL, Circuit Judge:

Appellant Jason Christopher Kent appeals his convictions for five separate firearms offenses and appeals his seventy-eight-month sentence. After review, we affirm.

I. PROCEDURAL HISTORY

A jury convicted Kent of five separate firearms offenses: possession of firearms, in violation of 18 U.S.C. § 922(g) (Count One); possession of a machine gun, in violation of 18 U.S.C. § 922(*o*) (Count Two); possession of a rifle with a barrel length of less than sixteen inches (a "short-barreled rifle"), not registered in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d) (Count Three); knowingly transporting stolen firearms in interstate commerce, in violation of 18 U.S.C. § 922(i) (Count Four); and bartering of stolen firearms, in violation of 18 U.S.C. § 922(j) (Count Five). At trial, the district court denied Kent's motions for a judgment of acquittal. After his trial, Kent filed a motion for a new trial, which the district court also denied.

On appeal, Kent contends, *inter alia,* that the trial evidence regarding Count Three was not sufficient to sustain his conviction for possession of an unregistered short-barreled rifle and that the district court abused

---

[*]Honorable James H. Hancock, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

its discretion in denying his motions for a judgment of acquittal and for a new trial regarding Count Three.[1]

After review, we affirm Kent's conviction and sentence and the trial court's denial of his motions for a

judgment of acquittal and for a new trial.

## II. FACTUAL BACKGROUND

In the apartment where Kent resided, law enforcement officials found sixteen firearms. Kent's

conviction under Count Three for possession of a short-barreled rifle was based on a Colt AR-15 found in

Kent's apartment. The weapon charged in Count Three was discovered in two pieces in Kent's apartment:

(1) a lower receiver unit with the stock and trigger mechanism and (2) an upper receiver unit containing a

barrel with a length of less than sixteen inches (the "short-barreled upper receiver unit").

The lower receiver unit was a section of a .223 caliber, Colt AR-15 rifle, with serial number

SP166738. The short-barreled upper receiver unit was an AR-15-type unit, compatible with AR-15-type

lower receiver units. However, the short-barreled upper receiver unit was not attached to the lower receiver

unit of this weapon at the time it was found.[2] Instead, an upper receiver unit with a barrel length in excess

---

[1]Kent also challenges the sufficiency of the evidence to sustain his convictions under Counts Two, Four, and Five. After review, we find that Kent's insufficient-evidence claims lack merit, and we affirm his convictions under Counts Two, Four, and Five without further discussion. *See* 11th Cir. R. 36-1.

Kent also contends that his conviction under Count One should be reversed based on entrapment by estoppel, but the Government correctly argues that Kent failed to present that claim to the district court. Kent's trial counsel did not move for a judgment of acquittal based on this defense, request a jury instruction on this defense, or otherwise assert this defense at trial. Because Kent is raising entrapment by estoppel as a defense for the first time on appeal, we decline to address the issue. *See Waldrop v. Jones,* 77 F.3d 1308, 1313 n. 3 (11th Cir.1996) ("We decline to address an issue not presented to the district court but raised for the first time on appeal."); *United States v. Edmondson,* 818 F.2d 768, 769 (11th Cir.1987).

[2]The record does not establish exactly where in Kent's apartment the short-barreled upper receiver unit and the lower receiver unit of the Colt AR-15 rifle were found. Hence, we do not know for certain whether or not these two items were found in "close proximity," but know only that Kent had a small apartment. *Cf. United States v. Carmouche,* 138 F.3d 1014, 1017 (5th Cir.1998) (concluding that a factual stipulation that police found a shotgun "[i]n close proximity" to a shotgun barrel, which "was made to fit the shotgun" and was less than thirteen inches long, was sufficient to support a conviction and sentence for possession of a short-barreled shotgun, in violation of 26 U.S.C. § 5861(d)).

of sixteen inches ("the longer-barreled upper receiver unit") was attached to the lower receiver unit that was part of the weapon charged in Count Three.

Nonetheless, the evidence at trial showed the short-barreled upper receiver unit could be fastened to the Colt AR-15 lower receiver unit through a two-step process. The first step—removing the upper receiver unit that was on the Colt AR-15 rifle—could be accomplished easily by pushing out two pins in the lower receiver unit and then lifting the upper receiver unit away from the lower receiver unit. The second step would be placing the short-barreled upper receiver unit on the lower receiver unit and pushing the two pins back into place to fasten the two receiver units together. This entire process could be completed in less than a minute.[3] ATF Firearms Enforcement Officer Robert Burrows testified that fastening the short-barreled upper receiver unit to the Colt AR-15 lower receiver unit in this way "results in a weapon which is designed and intended to be fired from the shoulder, capable of discharging a shot through a rifle bore[,] and having a barrel length of less than sixteen inches."

Kent admitted that he possessed the short-barreled upper receiver unit that could be combined with the Colt AR-15 lower receiver unit to form a short-barreled rifle. However, Kent testified that he owned the short-barreled upper receiver unit only for its component parts. He claimed that he intended to use the gas tube, the upper receiver assembly, the handguard assembly, the forward and rear sights, and "[e]verything but the barrel."

Despite Kent's claim, the evidence did not suggest that he had ever removed any of the component parts from the short-barreled upper receiver unit. Rather, the evidence showed that the short-barreled upper receiver unit was found intact, as one complete unit.[4] The shortbarreled upper receiver unit included an upper

---

[3]In a videotaped demonstration shown to the jury, ATF Firearms Enforcement Officer Robert Burrows removed the upper receiver unit from an Essential Arms AR-15 rifle found in Kent's apartment and fastened the short-barreled upper receiver unit in its place. This entire two-step process took Officer Burrows approximately thirty seconds.

[4]In the brief on appeal, Kent's attorney mentions that this upper receiver unit, which the attorney mistakenly refers to as a "barrel," was "found in Kent's junk parts box." From the pictures introduced, it is evident that the parts box was filled with springs, triggers, and other spare gun parts and did not contain

receiver assembly, a rifle barrel, a flash suppressor, forward and rear sights, a sling, a scope with batteries to activate the light in the scope, a gas tube, a handguard assembly, a bolt and bolt carrier—all welded or otherwise fastened together as a single, active upper receiver unit. The short-barreled upper receiver unit's flash suppressor had been welded permanently to the rifle barrel, and when law enforcement officials measured the rifle barrel "from the chamber end to the end of the flash suppressor," they determined the length to be fourteen inches. The sling on the short-barreled upper receiver unit was similar to the sling on the Colt AR-15 upper receiver unit which had the longer rifle barrel. The Government contended that this evidence of the short-barreled upper receiver unit being an intact, active unit, with a sling and with batteries in the scope, and the fact that the short-barreled upper receiver unit was easily interchangeable with other AR-15 upper receiver units including the longer-barreled unit on the Colt AR-15 when it was found in Kent's apartment, demonstrated that Kent's intent was to use the short-barreled upper receiver unit as an intact unit as opposed to using the unit for parts.

It is undisputed that Kent had not registered in the National Firearms Registration and Transfer Record the weapon that could be assembled by connecting the short-barreled upper receiver unit to the Colt AR-15 lower receiver unit.

III. STANDARD OF REVIEW

The sufficiency of the evidence to support Kent's conviction is reviewed *de novo,* viewing the evidence in the light most favorable to the Government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict. *United States v. Guerra,* 164 F.3d 1358, 1359 (11th Cir.1999); *United States v. Awan,* 966 F.2d 1415, 1434 (11th Cir.1992).

---

the upper receiver unit. There was some kind of short barrel among the parts in the box, but this barrel was not the one attached to the upper receiver unit or described in the indictment and hence is not relevant to this appeal. Furthermore, we note that the parts box to which Kent's attorney refers is a small, clear plastic box, divided into twelve compartments—the kind of box often used for fishing tackle or sewing supplies. This parts box would be too small to hold the upper receiver unit, even if the box were not already filled with gun parts.

The district court's denial of the motions for a judgment of acquittal will be upheld if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt. *United States v. Keller,* 916 F.2d 628, 632 (11th Cir.1990). The district court's denial of the motion for a new trial is reviewed for abuse of discretion. *United States v. Michael,* 17 F.3d 1383, 1384 (11th Cir.1994).

## IV. DISCUSSION

A.      Possession of an Unregistered Firearm Under 26 U.S.C. § 5861(d)

In Count Three, Kent was found guilty of possession of a rifle with a barrel length of less than sixteen inches, not registered in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d). Section 5861(d) of the National Firearms Act ("NFA")[5] makes it unlawful for any person to "possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d). The term "firearm" is defined for purposes of § 5861(d) and the NFA in general as including, *inter alia,* "a rifle having a barrel or barrels of less than 16 inches in length." 26 U.S.C. § 5845(a)(3). The term "rifle," in turn, is defined as:

> a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed cartridge to fire only a single projectile through a rifle bore for each single pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed cartridge.

26 U.S.C. § 5845(c). This definition of a rifle does not specify that a weapon must be assembled completely in order to be a "rifle." *Cf. United States v. Woods,* 560 F.2d 660, 665 (5th Cir.1977) (interpreting 26 U.S.C. § 5845(d), the NFA definition of "shotgun"). Instead, for a weapon to be a "rifle," that weapon simply must be capable of being "readily restored to fire." § 5845(c).

The parties do not dispute that the Colt AR-15, with the attached upper receiver unit with a longer barrel, found in Kent's apartment, constituted a "rifle." They also do not dispute that if that upper receiver unit was removed and the short-barreled upper receiver unit were fastened to the Colt AR-15's lower receiver unit, the resulting weapon would be a "rifle." Instead, the issue presented in this case is whether Kent's

---

[5]26 U.S.C. § 5849 provides that Chapter 53 of Title 26 may be cited as the National Firearms Act.

possession of the short-barreled upper receiver unit and the Colt AR-15 lower receiver unit, even though those two units were not fastened together when found in Kent's apartment, constituted possession of a "rifle having a barrel ... of less than 16 inches in length," a type of "firearm" required to be registered under § 5861(d).

B.       Sufficiency of the Evidence that Kent Possessed a Short-Barreled Rifle

 After review, we find that there was sufficient evidence to sustain Kent's conviction under Count Three.   The evidence indicates that the upper receiver unit was a complete, intact unit and that this short-barreled upper receiver unit was "compatible" and could be interchanged readily with the upper receiver unit on the Colt AR-15. Moreover, an ATF agent testified that the result of interchanging these upper receiver units would be "a weapon which is designed and intended to be fired from the shoulder, capable of discharging a shot through a rifle bore[,] and having a barrel length of less than sixteen inches."  Because the short-barreled upper receiver unit and the Colt AR-15 lower receiver unit were located in the same, small apartment and could be connected so quickly and easily, creating an operable short-barreled rifle with only a minimum of effort, evidence that Kent possessed both of these units was sufficient to prove that Kent possessed a "rifle having a barrel ... of less than 16 inches in length" for purposes of § 5861(d).  *See United States v. Woods,* 560 F.2d 660, 664 (5th Cir.1977);  *United States v. Zeidman,* 444 F.2d 1051 (7th Cir.1971).

The Fifth Circuit's decision in *Woods* involved possession of a shotgun, rather than a rifle, but provides guidance because the definition of a rifle in § 5845(c) contains some of the same language as the definition of a shotgun in § 5845(d).[6]  Both definitions encompass "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder ... and shall include any such weapon which may be readily restored to fire." § 5845(c)-(d).

The weapon possessed by the defendant in *Woods* was found in two parts—a fourteen and one-quarter inch shotgun barrel and a shotgun stock.  560 F.2d at 664.  The barrel was found under a dining room cabinet, and the stock was found on the top shelf of the same cabinet. *Id.* at 662, 664.  At trial, an

---

[6]Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are circuit precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

officer had demonstrated that these two parts easily could be connected to form a shotgun. *Id.* at 664. The Fifth Circuit determined that the defendant's possession of these two parts should be considered possession of an unregistered short-barreled "shotgun" in violation of § 5861(d). *Id.* The Court reasoned that "[t]he fact that the weapon was in two pieces when found is immaterial considering that only a minimum of effort was required to make it operable." *Id.* The Court explained that the NFA's definition of "shotgun," in "[s]ection 5845(d)[,] does not specify that the parts must be assembled before it applies." *Id.* at 665. Moreover, the Court emphasized that "[t]he firearm in question was capable of being 'readily restored to fire a fixed shotgun shell,' and to reason otherwise would be to frustrate or defeat the very purpose of the statute." *Id.*

Similarly, in *Zeidman,* the Seventh Circuit affirmed a conviction for possession of an unregistered "firearm" under § 5861(d). At issue in *Zeidman* was whether the defendant's possession of a pistol and a detachable shoulder stock constituted possession of a short-barreled "rifle" for purposes of the NFA, even though the pistol and shoulder stock were found in "different drawers of the same dresser." 444 F.2d at 1053. Notwithstanding the absence of evidence that the defendant actually had attached the shoulder stock to the pistol, the court concluded that the defendant had possessed a short-barreled "rifle" and hence a "firearm" for purposes of the NFA. The court based this conclusion on the fact that the shoulder stock and pistol clearly could be easily attached, as follows:

> When viewed together, the interrelationship of these two items is apparent, even without prior knowledge of their connection. The pistol fits snugly into the butt end of the shoulder stock. With the end closed the stock operates both as a holster and as a means to conceal the weapon. Furthermore, fixtures on the tapered end of the stock allow the pistol to be securely attached thereto....

> Once the two parts are attached in rifle form it becomes clear that the single unit fits the definition of a short barreled rifle. 26 U.S.C. § 5845(c).

*Id.* Thus, as in the present case, the critical factor for the courts in *Zeidman* and *Woods* was that the weapon could "be readily restored" to operate as a "firearm" for purposes of § 5861(d).

C.      *Thompson/Center* and *Owens*

7

Kent argues that a different conclusion is required by either *United States v. Thompson/Center Arms,* 504 U.S. 505, 112 S.Ct. 2102, 119 L.Ed.2d 308 (1992), or *United States v. Owens,* 103 F.3d 953 (11th Cir.), *cert. denied,* --- U.S. ----, 118 S.Ct. 44, 139 L.Ed.2d 11 (1997). We disagree. We first discuss both cases in detail and then explain why they support the result here.

1.      *Thompson/Center*

The issue presented in *Thompson/Center* was whether Thompson/Center Arms, a gun manufacturing company, owed taxes under the NFA, 26 U.S.C. § 5821,[7] for "making" a "firearm." 504 U.S. at 506-07, 112 S.Ct. 2102. Not all pistols, rifles, or other guns are covered by the taxes due under § 5821 because "[t]he word 'firearm' is used as a term of art in the NFA." *Id.* at 507, 112 S.Ct. 2102. The term "firearm" is defined for purposes of § 5821, just as it is for § 5861(d) in this case, by § 5845(a), which includes *inter alia,* "a rifle having a barrel or barrels of less than 16 inches in length." 26 U.S.C. § 5845(a)(3). The question in *Thompson/Center* was whether the company had "made" a "firearm," and particularly a short-barreled rifle, subject to taxes under § 5821(a).

The evidence showed that Thompson/Center Arms had produced a parts kit that could be used to convert a pistol it manufactured into either a short-barreled rifle or a non-"firearm" rifle. 504 U.S. 505, 507, 112 S.Ct. 2102, 119 L.Ed.2d 308 (1992). The pistol manufactured by Thompson/Center Arms was a single-shot pistol called the "Contender" and was designed so that its handle and barrel could be removed from its receiver. *Id.* at 508, 112 S.Ct. 2102. The kit Thompson/Center Arms manufactured for converting the Contender into a rifle contained a twenty-one-inch rifle barrel, a rifle stock, and a wooden fore-end. *Id.* Assembling these three parts with the Contender's receiver would result in a carbine rifle with a twenty-one inch rifle barrel, which, like the pistol itself, would not be a "firearm" for purposes of the NFA. *Id.* at 507-08, 112 S.Ct. 2102. However, by using the ten-inch pistol barrel from the Contender instead of the

---

[7]Section 5821(a) provides that "[t]here shall be levied, collected, and paid upon the making of a firearm a tax at the rate of $200 for each firearm made." 26 U.S.C. § 5821(a).

twenty-one-inch rifle barrel from the parts kit, a short-barreled rifle—a "firearm" under 26 U.S.C. § 5845(a)(3)—could be assembled. *Id.*

In *Thompson/Center,* a plurality of three Justices ultimately concluded that it was ambiguous whether Thompson/Center Arms had "made" a short-barreled rifle for purposes of the NFA by packaging together the pistol and the parts kit. *Id.* at 518, 112 S.Ct. 2102. In the course of reaching this conclusion, the plurality focused on the NFA's definition of "make" in 26 U.S.C. § 5845(i).[8] Even though the plurality decided that the definition of "make" was ambiguous as applied to the specific combination of parts packaged by Thompson/Center Arms, the plurality recognized that the definition clearly "cover[s] more than final assembly" of a "firearm" and that "*some* disassembled aggregation of parts must be included." *Id.* at 510, 112 S.Ct. 2102 (emphasis supplied). Moreover, the plurality recognized two factual situations in which, under the NFA's definition of "make," packaging together unassembled parts would clearly constitute "making" a "firearm." *Id.* at 510-12, 112 S.Ct. 2102.

According to the plurality, the first of these situations—the "paradigm" situation—would be the aggregation of a set of parts that could only be used to assemble a "firearm" for purposes of the NFA. *Id.* at 510-13, 112 S.Ct. 2102. For example, the plurality explained that aggregating disassembled parts in a complete short-barreled rifle kit would be "making" a short-barreled rifle. *Id.* at 511, 112 S.Ct. 2102. No further assembly of those parts would be necessary to "make" a "firearm" for purposes of the NFA. *Id.*

The plurality then described the second of these situations in which making a combination of parts clearly would constitute "making" a "firearm" for purposes of the NFA. The plurality referred to this second situation as "facts one step removed from the paradigm." *Id.* at 512, 112 S.Ct. 2102. According to the plurality, this near-paradigm situation would be packaging a complete gun other than a "firearm" together with "a further part or parts that would have no use in association with the gun except to convert it into a

---

[8]The NFA's definition of "make" provides that "[t]he term 'make', and the various derivatives of such word, shall include manufacturing (other than by one qualified to engage in such business under this chapter), putting together, altering, any combination of these, or otherwise producing a firearm." 26 U.S.C. § 5845(i).

firearm." *Id.* at 511-12, 112 S.Ct. 2102. In other words, packaging a complete, non "firearm" rifle together with a barrel less than sixteen-inches in length and any other parts that would have no use except to convert that rifle into a short-barreled rifle would suffice to "make" a short-barreled rifle for purposes of the NFA.

The plurality, however, distinguished these two factual situations and the facts of *Thompson/Center Arms. Id.* at 512-13, 112 S.Ct. 2102. The plurality observed that the aggregation of parts in the paradigm situation had "no useful purpose except the assembly of a firearm" and that the aggregation in the near-paradigm situation had "no ostensible utility except to convert a gun into [a firearm]." *Id.* In contrast, the plurality reasoned that the particular pistol and conversion kit packaged by Thompson/Center Arms could be used to assemble either a "firearm" short-barreled rifle or a non-"firearm" rifle. *Id.* Thus, because Thompson/Center Arm's aggregation of parts into a kit did not fit either the paradigm or the near-paradigm situation, the plurality concluded that it was not clear whether Thompson/Center Arms had "made" a "firearm" for purposes of the NFA. *Id.* at 513-18, 112 S.Ct. 2102.

The plurality's "utility" analysis was criticized by the two Justices who joined the result reached by the plurality but not the reasoning. *Id.* at 519-23, 112 S.Ct. 2102. Also, there were four dissenting Justices who described the plurality's "utility" analysis as an "artificial line" and a "resort to ingenuity to create ambiguity." *Id.* at 524, 112 S.Ct. 2102. These four Justices would have held that Thompson/Center Arms had "made" a "firearm" simply by producing and packaging the components necessary to assemble a short-barreled rifle. *Id.* at 523-26, 112 S.Ct. 2102. In light of these differing opinions, any lesson to be learned from *Thompson/Center* is far from clear. In fact, to some extent, because there was no majority opinion with the same reasoning, it is difficult to apply *Thompson/Center* to any subsequent case unless it involves a factual situation that is the same or substantially similar to that at issue in *Thompson/Center.* We find that *Thompson/Center* raises more questions than it answers and thus have looked for guidance to cases with facts closer to those here—*i.e., United States v.Woods,* 560 F.2d 660 (5th Cir.1977), and *United States v. Zeidman,* 444 F.2d 1051 (7th Cir.1971). Nonetheless, to the limited extent *Thompson/Center* may provide

10

guidance here, the facts of this case are most analogous to the facts described in the second, or near paradigm, situation, and thus *Thompson/Center* would support sustaining Kent's conviction. The short-barreled upper receiver unit here clearly and easily can be used to convert the Colt AR-15 into a "firearm" and has no other ostensible purpose aside from making such a conversion.

One of the specific examples the *Thompson/Center* plurality cited of a case involving a near-paradigm-type situation is the decision in *Zeidman,* which we discussed earlier. *Thompson/Center,* 504 U.S. at 512, 112 S.Ct. 2102. The defendant in *Zeidman* possessed a pistol and a detachable holster-shoulder stock that could be fastened to the pistol, thereby converting the pistol to a short-barreled rifle. 444 F.2d at 1053. When law enforcement officials searched the defendant's home, they found the pistol and the stock "in different drawers of the same dresser." *Id.* Nonetheless, the *Zeidman* court upheld the defendant's conviction for possession of an unregistered short-barreled rifle in violation of § 5861(d) because the stock clearly and easily could be used to convert the pistol to a "firearm." *Id.* Indeed, the stock had no other ostensible purpose aside from converting the pistol to a "firearm." *Id.*

We recognize that Kent argues he had the short-barreled upper receiver unit to use for its parts. However, the Government introduced sufficient evidence to raise an issue for the jury about whether Kent's intent was to use the short-barreled upper receiver unit only for parts or to use the short-barreled upper receiver unit with the lower receiver unit as an AR-15 rifle. The Government introduced a videotaped demonstration which showed that it took only about thirty seconds to remove an AR-15 upper receiver unit from a lower receiver unit and install the short-barreled upper receiver unit in its place. The Government also introduced evidence that the upper receiver unit was a complete, intact unit that included not just a barrel, but also a flash suppressor, forward and rear sights, a scope with batteries to activate the light in the scope, a gas tube, a handguard assembly, and a sling ready to be attached to a lower receiver unit. In addition, there was no other lower receiver unit found in Kent's apartment to which the short-barreled upper receiver unit could be attached and used to create a legal weapon for purposes of the NFA. Moreover, Kent has never contended

11

that there was a pistol grip or any other piece that he could use to make a legal weapon from this short-barreled upper receiver unit. Indeed, it would not be possible to combine the short-barreled upper receiver unit with any kind of lower chamber or lower receiver unit, such as a pistol grip, to create a weapon that would not be a "firearm" for purposes of the NFA.[9]

2.      *Owens*

We also find that *United States v. Owens* expressly reserved the issue here and does not require a reversal of Kent's conviction in Count Three. 103 F.3d 953 (11th Cir.1997). *Owens,* like the present case, and unlike *Thompson/Center,* involves a challenge to a conviction for possession of an unregistered rifle in violation of § 5861(d). 103 F.3d at 954. In *Owens,* the defendant argued that his conviction should be set aside because it was ambiguous whether § 5861(d) required him to register his possession of a "firearm" when he merely possessed unassembled parts. These parts included an Uzi mini-carbine, six magazines, a seven-inch barrel, a nineteen and three-quarters-inch barrel, a barrel shroud, a sling, and a shoulder holster. *Id.* at 954. From these parts, it was possible to assemble either a rifle with a seven-inch barrel that would qualify as a "firearm" or a rifle with a nineteen-and-three-quarters-inch barrel that would not qualify as a "firearm." *Id.* at 955. Thus, the parts possessed by Owens presented a situation more analogous to the facts of *Thompson/Center* than to the rifle with interchangeable upper receiver units involved in this case.

However, because evidence in the record indicated that Owens did more than just possess parts that could be assembled into a short-barreled rifle, this Court in *Owens* found it unnecessary to address the applicability of *Thompson/Center* to the facts of *Owens* or to § 5861(d) in general. An ATF agent testified that in the past Owens actually had assembled the rifle using the seven-inch barrel—even though the rifle was not so assembled at the time of Owens's arrest. *Id.* Owens thereby had in his possession a weapon that was an unregistered, short-barreled rifle-an unregistered "firearm" for purposes of § 5861(d). As a result, this

---

[9]This is because, by definition, a "firearm" can be either "a rifle having a barrel or barrels of less than 16 inches in length" or "a weapon made from a rifle if such weapon as modified has ... a barrel or barrels of less than 16 in inches in length." 26 U.S.C. § 5845(a)(3)-(4).

12

Court determined that § 5861(d), "as applied to Owens, clearly was not vague." *Id.* The *Owens* Court reserved for consideration "whether the effect of [§ 5861(d) ] is uncertain with respect to other litigants." *Id.*

Turning to the instant case, we find that § 5861(d), as applied to Kent under the facts of this case, also is not vague. While there is no direct evidence that Kent had assembled the rifle using the short-barreled upper receiver unit before, there was sufficient evidence, as outlined above, that Kent did not have the short-barreled upper receiver unit for parts, but for use with the lower receiver unit, which would constitute possession of a "firearm" required to be registered under § 5861(d) of the NFA.

D.      Denial of Kent's Motions for a Judgment of Acquittal and a New Trial

Because the evidence was sufficient to support the jury's verdict, we uphold the district court's denial of Kent's motions for a judgment of acquittal. We also conclude that the district court's denial of the motion for a new trial was not an abuse of discretion.

## V. CONCLUSION

For the foregoing reasons, we affirm Kent's convictions and sentence and affirm the district court's denial of Kent's motions for a judgment of acquittal and a new trial.

AFFIRMED.