UNITED STATES of America,
Plaintiff,

v.

ONE (1) COLT AR–15 FIREARM
SERIAL NUMBER TA03524
Defendant.

No. 1–03–1245–T–AN.

United States District Court,
W.D. Tennessee,
Eastern Division.

Oct. 7, 2004.

Mr. Christopher E. Cotten, U.S. Attorney's Office, Memphis, TN, for Plaintiff.

Mr. Ronald D. Krelstein, Germantown, TN, for Defendant.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND FORFEITURE AND DENYING CLAIMANT'S MOTION FOR SUMMARY JUDGMENT

TODD, District Judge.

This action was brought by Plaintiff, United States, for forfeiture of one Colt AR–15 firearm, serial number TA035524, pursuant to 26 U.S.C. § 5872(a), on the basis that there had been a knowing violation of the National Firearms Act of 1934 ("NFA"), 26 U.S.C. § 5861(d). Claimant, Melvin Saccomanno, seeks summary judgment, claiming that: (1) the NFA does not apply to the defendant rifle, (2) the rifle is not subject to the payment of a tax under the NFA, and (3) the rifle is not required to be registered under the NFA. Plaintiff responded and files its own motion for summary judgment, arguing that: (1) Claimant lacks standing to contest the forfeiture of defendant firearm, and (2) the defendant firearm is subject to forfeiture. Claimant filed a response to Plaintiff's motion. For the following reasons, Plaintiff's motion for summary judgment is GRANTED. Consequently, Claimant's motion for summary judgment is DENIED.

## I.  Facts

The following facts are undisputed unless otherwise noted. On November 16, 2002, Kenneth Thompson of the Savannah, Tennessee, Police Department responded to a call that a vehicle was stuck in a ditch on a city street. The vehicle was in the possession of Michael Saccomanno, the son of Claimant. Officer Thompson believed that Saccomanno was intoxicated or under the influence of drugs.

Upon inspection of the vehicle, Officer Thompson claims to have observed in plain view the handle of a large Bowie knife. A subsequent search of the vehicle also revealed a Colt model AR–15, 9mm carbine rifle, serial number TA03524. The rifle was seized by Officer Thompson and is the subject of this forfeiture proceeding. The search also revealed an open container of beer, drug paraphernalia, and driver's licenses with various names.

On December 13, 2002, the Department of the Treasury, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), took possession of the defendant firearm from the Savannah Police Department. After inspection by ATF Firearms Enforcement Officer Alfred V. Hourde, it was determined that the firearm was not manufactured in the state of Tennessee, that the rifle is a "firearm" as defined in 18 U.S.C. § 921(a)(3), and that the weapon has a barrel of less than sixteen inches and is, therefore, also a "firearm" as defined in 26 U.S.C. § 5845(a)(3). In addition, the parties stipulated to the following facts:

(1) The rifle is not registered in the National Firearms Registration and Transfer Record for either Michael Saccomanno or Melvin Saccomanno.

(2) The rifle was manufactured by Colt Manufacturing between 1985 and 1987.

(3) The rifle, with the exception of a laser sight, is in the original equipment configuration as manufactured by Colt.

(4) There is no evidence that the claimant, except with respect to the addition of the laser sight, modified the rifle after buying it.

(5) The rifle is chambered for the 9mm pistol cartridge.

(6) As originally equipped by Colt, the barrel consists of two sections:

(a) A section approximately 13.5" in length with threads at the muzzle end,

(b) A section approximately 6" in length and threaded for attachment to the first section. When the two sections are screwed together, the length of the barrel is approximately 19.5".

(7) At the time of manufacture, the rifle was not made by Colt as a rifle subject to the registration requirements of the National Firearms Act [NFA].

(8) At the time of its sale by Colt, the rifle was not sold as a NFA firearm; nor recorded in the National Firearms Registry of NFA firearms transferred pursuant to the NFA.

(9) At the time of manufacture, Colt did not pay a manufacturing tax imposed on manufactured items subject to the NFA.

(10) The claimant purchased the rifle, as new in the box, from a licensed firearms dealer in Salt Lake City, Utah between 1986 and 1987.

(11) At the time of its seizure, the barrel on the rifle had both sections screwed together and in that condition, the overall length of the barrel was over 16" in length.

Stipulation of Facts, ¶¶ 1–11.

After the firearm was seized and delivered to the ATF, Claimant filed a claim with the administrative agency claiming an interest in the rifle. This claim was received by the ATF on June 27, 2003. On September 23, 2003, the United States brought this action seeking forfeiture of the rifle pursuant to 26 U.S.C. § 5872(a). On September 29, 2003, in response to the forfeiture action, this court ordered the ATF to seize the rifle and hold it until otherwise instructed by the court. The court further ordered the ATF to advertise the forfeiture in the *Daily News*, Memphis, Tennessee, for three consecutive weeks, giving any parties claiming interest in the property thirty days to file a claim and to file an answer within twenty days of filing the claim with the Clerk's office pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims. Claimant did not file under the requirements of Rule C within thirty days; however, he submitted a verified claim to this court on September 22, 2004. Plaintiff consented to the late filing.

## II. Analysis

Motions for summary judgment are governed by Fed.R.Civ.P. 56. If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Fed.R.Civ.P. 56(c). The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The opposing party may not rest upon the pleadings but must go beyond the pleadings and "by affidavits or as otherwise provided in this rule, must set forth specif-

ic facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548.

"If [a party] ... moves for summary judgment ... based on the lack of proof of a material fact, ... [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, the court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter but only to determine whether there is a genuine issue for trial. *Id.* at 249, 106 S.Ct. 2505. Rather, "[t]he inquiry on a summary judgment motion ... is ... 'whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law.'" *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989)(quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505). Doubts as to the existence of a genuine issue for trial are resolved against the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

1. Whether Claimant has standing to contest the forfeiture proceeding

■ "In order to contest a governmental forfeiture action, claimants must have statutory standing through compliance with Supp. Admiralty and Maritime Claims R. C(6), as well as the Article III standard required for any action brought in federal court." *United States v. $515,060.42 in U.S. Currency,* 152 F.3d 491, 497 (6th Cir. 1998); *see also United States v. Currency $267,961.07,* 916 F.2d 1104, 1107 (6th Cir. 1990).

■ In its motion for summary judgment, Plaintiff argued that Claimant does not have standing to contest the forfeiture action because he has failed to file a verified claim that complies with the Supplemental Admiralty and Maritime Claims, Rule C(6).[1] However, Plaintiff does not contest Article III standing. As indicated, Claimant filed a verified claim with the district court on September 22, 2004. Plaintiff has consented to the late filing of the claim; therefore, Claimant's standing is no longer at issue. Claimant has standing to contest the forfeiture action.

2. Whether Defendant firearm is subject to forfeiture

In this case, the United States has instituted a civil forfeiture action pursuant to the National Firearms Act (NFA), 26 U.S.C. § 5872(a), which provides, in part, that "[a]ny firearm involved in any violation of the provisions of this chapter shall be subject to seizure and forfeiture...." Specifically, defendant firearm is alleged

---

1. Rule C(6)(a) provides:
In an in rem forfeiture action for violation of a federal statute:
(i) a person who asserts an interest in or right against the property that is subject of the action must file a verified statement identifying the interest or right:
(A) within 30 days after the earlier of (1) the date of service of the Government's complaint or (2) completed publication of notice under Rule C(4), or

(B) within the time that the court allows.

.    .    .    .    .

(iii) a person who files a statement of interest in or right against the property must serve and file an answer within 20 days after filing the statement.
Supplemental Rule for Certain Admiralty and Maritime Claims, Rule C(6) (2004).

to be involved in a violation of 26 U.S.C. § 5861(d), which makes it unlawful for an individual "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." The government has the burden, by a preponderance of the evidence, to establish that the defendant firearm is subject to forfeiture. 18 U.S.C. § 983(c)(1) (2000 & Supp.2004).

Claimant argues that the rifle at issue is not subject to the NFA and, therefore, is not subject to forfeiture because it is not a "firearm" as defined by the statute. Claimant reasons that the defendant rifle is not a "firearm" because, when the two parts of the barrel are attached, the barrel is over sixteen inches in length. Further, Claimant bought the rifle with the two parts attached, and he has not separated them; therefore, the rifle has never been under sixteen inches while in his possession. As a result, Claimant contends, the defendant rifle is not required to be registered with the National Firearms Registration and Transfer Record, nor is it subject to taxation.[2] Plaintiff counters that the six-inch detachable barrel section (described by the parties as a flash suppressor) should not be counted in measuring the barrel's length when determining if it is "firearm" under the NFA.[3] At issue is what constitutes a "firearm" under the NFA.

"The word 'firearm' is used as a term of art in the NFA." *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 507, 112 S.Ct. 2102, 119 L.Ed.2d 308 (1992). A non-exclusive definition of the term includes "a rifle[4] having a barrel or barrels of less than 16 inches in length...." 26 U.S.C. § 5845(a)(3). Whether a flash suppressor is included in the barrel length of a rifle, however, is not clear from the statute itself. Twenty-seven C.F.R. § 479.11 provides that the length of a barrel "shall be determined by measuring the distance between the muzzle and the face of the bolt, breech, or breech block when closed...." Neither the statute nor the regulation discusses flash suppressors in relation to a rifle's barrel length.

■ In the absence of any clear set of rules, it is necessary to discuss in detail the few court opinions and regulations pertaining to measuring the barrel length of a rifle. In analyzing these relevant court opinions and regulations, two issues

---

**2.** Claimant also argues that, at the time Colt made the defendant rifle, it was not subject to the registration requirements of the NFA, nor to taxes under the NFA, therefore, the firearm is now not subject to the statute because it was not altered from its original condition in any way. As the government correctly argues, however, "there is no evidence in the record that Colt has regularly manufactured and sold AR–15's in this configuration, or even that another rifle like the defendant AR–15 exists-only that for some reason, this particular weapon escaped the notice of ATF until it was seized in this case." Response of the United States to Claimant's Motion for Summary Judgment, at 9. Thus, the fact that the rifle was not registered under the NFA nor subject to taxes at the time that it was manufactured is not dispositive in this case.

**3.** Neither party has clearly stated that the smaller six inch section, which was threaded for attachment with the larger section, is a flash suppressor, however, both parties referred to the firearm in their motions as under sixteen inches if the flash suppressor is removed. The court will presume, therefore, that the smaller section is a flash suppressor.

**4.** "The term 'rifle' means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed cartridge." 26 U.S.C. § 5845(c).

emerge. The overall issue is whether a flash suppressor is counted in the barrel length of a rifle. In addition, a sub-issue is how to treat rifle components, such as flash suppressors, that when assembled or unassembled can create a regulated short-barreled rifle subject to the NFA.

The first issue, whether a flash suppressor is included in the length of barrel, is thoroughly discussed in *United States v. Drasen*, 845 F.2d 731 (7th Cir.1988). In *Drasen*, a parts kit was sold which contained a flash suppressor. *Id.* at 737. The one-piece barrel was over sixteen inches if the flash suppressor was attached. *Id.* The court considered, among other issues, whether the defendant was selling an illegal short-barreled rifle when the flash suppressor made the overall length greater than sixteen inches. *Id.* The Seventh Circuit stated that:

[a] flash suppressor, which has limited legitimate use apart from the military or police, is not an essential part of a rifle. A rifle fires accurately without it. A flash suppressor is an optional attachment that can be screwed to the end of the barrel. It is no more a part of the barrel than the rifle stock attached to the opposite end of the barrel. Federal regulations outline how to measure a barrel from its muzzle, which would exclude any removable attachment on the end of the muzzle. *See* 27 C.F.R. §§ 179.11 (1987). If a flash suppressor is permanently affixed to a barrel it may be counted in measuring barrel length, Rev. Rul. 55–570, 1955–2 C.B. 481, but that is not the present case. Thus the

flash suppressors here did not add to the barrel length of the rifles."

*Id.* The *Drasen* court held that the unassembled "complete parts kit" for a short-barreled rifle did not, in fact, create a "long barreled" rifle for purposes of the NFA, in part because the flash suppressor was not counted in the barrel measurement.

In *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 112 S.Ct. 2102, 119 L.Ed.2d 308 (1992), the Supreme Court granted certiorari to resolve a split in the circuits between the Seventh Circuit's *Drasen* opinion and the opinion of the Court of Appeals for the Federal Circuit as to whether a short-barreled rifle must be assembled to be "made" pursuant to the NFA. In *Thompson/Center Arms*, Thompson/Center manufactured the "Contender" pistol, as well as a conversion kit containing a shoulder stock and a twenty-one inch barrel. *Id.* at 507, 112 S.Ct. 2102. A person purchasing the kit could then convert the Contender into either a regulated ten inch or "short-barreled" carbine rifle, or an unregulated twenty-one inch "long-barreled rifle" barrel. *Id.*

The Court considered whether a gun manufacturer "makes" a short-barreled rifle subject to the NFA when it packages as a unit a pistol together with a kit than can make both a regulated and unregulated rifle.[5] In a plurality decision, the Court held that the statutory language was ambiguous, thus, the Court must apply the rule of lenity and rule in favor of the

---

**5.** If a manufacturer does not "make" a "firearm" when it assembles and sells a conversion kit, then it seems to follow that a "firearm" would not be made until the consumer actually assembles a short-barreled rifle. As applied to the present case, Claimant's argument would be that the defendant rifle was not a "firearm" because when it was sold it

was not subject to the NFA, and that he did not "make" it into a "firearm" by altering it in anyway from its original form. This argument is predicated on the court accepting that flash suppressors are included in measuring the barrel length which, as will be explained, the court is not willing to do.

manufacturer. *Id.* at 517–18, 112 S.Ct. 2102.

The implications of *Thompson/Center Arms* have been far from clear. Subsequent courts applying *Thompson/Center Arms* have limited its application to facts directly on point. *United States v. Ardoin,* 19 F.3d 177, 180–81 (5th Cir.1994) (finding that *Thompson/Center Arms* is applicable only to unassembled parts); *United States v. Kent,* 175 F.3d 870, 877 (11th Cir.1999) (stating that "any lesson to be learned from *Thompson/Center* is far from clear. In fact, to some extent, because there was no majority opinion with the same reasoning, it is difficult to apply *Thompson/Center* to a subsequent case unless it involves a factual situation that is the same or substantially similar to that at issue in *Thompson/Center.* We find that *Thompson/Center* raises more question than it answers and thus have looked for guidance to cases with facts closer to those here . . . ."). Although the Court granted certiorari to resolve the split between the Seventh and the Federal Circuits, it did not effectively do so. Further, as to *Drasen*'s ruling on flash suppressors, the *Thompson/Center Arms* Court specifically did not decide whether a flash suppressor is counted in measuring the barrel length, noting that:

> [i]n *Drasen,* a complete-parts kit was sold with a flash suppressor, which, if affixed to the rifle barrel, would have extended it beyond the regulated length. Because the *Drasen* court concluded that such a flash suppressor was not a

part of the rifle's barrel, its holding is consistent with ours.

504 U.S. at 510 n. 3, 112 S.Ct. 2102 (internal citations omitted). Thus, while the Supreme Court's holding may be unclear, it seems to have left the *Drasen* court's decision intact as to whether flash suppressors were measured as a part of the barrel to determine if a rifle is a "firearm" under the NFA.

Claimant takes issue with the *Drasen* decision, arguing that the Seventh Circuit misinterpreted the interplay between 27 C.F.R. § 179.11, now codified as 27 C.F.R. § 479.11 (2004), and Rev. Ruling 55–570, 1955 C.B. 481. Claimant correctly states that 27 C.F.R. § 179.11 provides regulatory guidance for measuring a barrel, but that the regulations are silent on what constitutes a barrel, and whether a barrel can be two pieces or only one piece. This is consistent with the Seventh Circuit's treatment of the regulation. Claimant disagrees with the *Drasen* court's interpretation of Rev. Ruling 55–570, however, because he argues that the ruling did not address the effect of flash suppressors, but, rather, what effect the installation of a sleeve-type muzzle brake affixed to the end of the muzzle would have on a firearm already lawfully registered pursuant to the NFA.[6] Claimant argues that the Seventh Circuit inappropriately considered 27 C.F.R. § 179.11 with Rev. Ruling 55–570, misinterpreting the ruling, in order to find that a flash suppressor must be permanently affixed to the barrel in order to be measured in the barrel length.

---

**6.** Rev. Rul. 55–570 states that:

A gunsmith desires to affix a sleeve-type muzzle brake to the muzzle end of a short-barreled rifle (a firearm within the purview of the National Firearms Act) in order to lengthen the barrel of the weapon to 18 inches or more, thereby removing it from classification of a firearm as defined in *sec-*

*tion 5848 of Internal Revenue Code* of 1954. *Held,* after proper registration of a short barreled rifle, the barrel may be lengthened to 18 inches (or more) by the attachment of an extension, such as a muzzle brake or barrel band, by silver soldering or by other *permanent* means.
Rev. Rul. 55–570, 1955–2 C.B. 481.

While the court finds some merit in Claimant's contention that the *Drasen* court improperly applied Rev. Ruling 55–570 to flash suppressors, the ruling does not necessarily merit a finding for Claimant. Rev. Ruling 55–570 does give insight as to how a barrel should be measured; specifically, it supports the argument that an attachment to a barrel should be measured as a part of the barrel length only if it is permanently affixed, the point that the Seventh Circuit was attempting to make in *Drasen*. Although the ruling addresses muzzle brakes on registered firearms, and not flash suppressors on unregistered rifles, the ruling could logically be analogized to a flash suppressor because, like muzzle brakes, a flash suppressor is an accessory to a rifle barrel. Like a muzzle brake, a flash suppressor can be either temporarily or permanently attached to the barrel.[7] Consequently, although Rev. Ruling 55–570 does not specifically provide that a flash suppressor may be counted in a rifle's barrel length only if it is permanently attached, it does provide some support for that conclusion.[8] Further, the *Drasen* decision and the Supreme Court's reference to *Drasen* on the issue of flash suppressors support the contention that a flash suppressor should not be measured in the length of a rifle unless it is permanently affixed to the barrel.

In this case it is undisputed that the flash suppressor was not permanently affixed to the defendant rifle's barrel. It is also undisputed that, with its flash suppressor removed, the defendant rifle has a barrel of less than sixteen inches in length. Because *Drasen, Thompson/Center Arms,* and Rev. Ruling 55–570 support a finding that a flash suppressor should not be measured as a part of the rifle's barrel length unless it is permanently attached, the flash suppressor should not be considered in determining barrel length. Accordingly, the court finds that the defendant rifle's barrel measures less than sixteen inches when the flash suppressor is removed, making it subject to regulation pursuant to the NFA.

■ The second issue, how to treat component parts of a rifle that when assembled or removed can create a short-barreled rifle, is discussed in *Thompson/Center Arms, United States v. Kent,* 175 F.3d 870 (11th Cir.1999), *United States v. Woods,* 560 F.2d 660, 664 (5th Cir.1977), and *United States v. Zeidman,*

---

7. This court is not holding that a flash suppressor is the same as a muzzle break. A flash suppressor is defined "as any device designed, intended, or that functions to perceptibly reduce or redirect muzzle flash from the shooter's field of vision." Department of Justice Regulations for Assault Weapons and Large Capacity Magazines, California Office of the Attorney General, Chapter 12.8, Article 1 § 978.20(b). This definition does not include muzzle brakes because muzzle brakes "are not flash suppressors [] if they do not reduce or redirect flash from the shooter's field of vision." *Id.* at "Final Statement of Reasons." A muzzle brake, by contrast, reduces felt recoil when a firearm is discharged. Although flash suppressors and muzzle brakes have different functions, and are not interchangeable "terms of art," they are both accessories to a rifle. Neither is crucial to the functioning of a rifle. Although they do not serve the same purpose, they both serve as an attachment to a barrel rather than as a part of the barrel itself. Because their relationship to the barrel is similar, a revenue ruling stating that one must be permanently attached to the barrel to be counted in barrel length could be applied to the other.

8. *See also United States v. Broom,* 742 F.Supp. 574, 575–76 (D.Colo.1990) (finding that a seizure of a legal rifle was reasonable under the Fourth Amendment because a reasonable officer could believe it to be an illegal firearm where the rifle "ultimately proved to have a barrel length of more then 16 inches because in the lab it was determined that the 'flash suppressor' was permanently affixed to the barrel.").

444 F.2d 1051 (7th Cir.1971). In *Kent, Woods,* and *Zeidman,* the Fifth and Seventh Circuits considered whether the defendants, who had stored unassembled rifle pieces a short distance from each other that when assembled would make an illegal short-barreled rifle, possessed a "firearm" under the NFA.[9] In all three cases, the courts found that the fact that the weapons were discovered unassembled was immaterial because an illegal short-barreled rifle could be made in under one minute and with only a minimal amount of effort. *Kent,* 175 F.3d at 875; *Woods,* at 665; *Zeidman,* 444 F.2d at 1053. Crucial to the analysis in all three cases was that the defendants *could* easily make an illegal firearm, and not whether they *actually* had made an illegal firearm. *See Kent,* 175 F.3d at 875.

Of the three cases, only *Kent* was decided after *Thompson/Center Arms.* The *Kent* court specifically distinguished its holding from *Thompson/Center Arms* on the facts, also stating that if the court were to apply *Thompson/Center Arms,* the defendant would still be found to be in possession of an illegal "firearm" because the defendant's gun, along with the other component parts, would have "no ostensible purpose aside from" converting the gun into a short-barreled rifle.[10] *Id.* at 577, 112 S.Ct. 2102. In *Kent,* even where the various rifle components were not assembled, if assembling them can create only an illegal firearm, then the rifle will be subject to the NFA. *See also Thompson/Center Arms Co.,* 504 U.S. at 510–13, 112 S.Ct. 2102.

The present case must be distinguished from the aforementioned cases in at least one respect. In *Thompson/Center Arms, Kent, Woods,* and *Zeidman,* the courts discussed unassembled parts, *i.e.,* possession of different parts that, when put together, could create an illegal short-barreled rifle. Here, Claimant presents the opposite scenario. Claimant has an assembled rifle that, if the flash suppressor were removed, would create a "firearm" under the NFA.

Despite the distinction, the aforementioned cases do not lose their value. Although no cases have considered whether an assembled rifle that can be taken apart to make a rifle under sixteen inches in length is subject to the NFA, the general

---

**9.** In *Kent,* the weapon was, as is in our case, a Colt AR–15. Unassembled, but in the same small apartment, police found a short-barreled upper receiver unit and the Colt AR–15 lower receiver unit that, when put together, would have a barrel of less than sixteen inches in length. 175 F.3d at 874. In *Woods,* the weapon at issue was found in two parts-the barrel was found under a dining room cabinet, and the stock was found on top of the shelf in the same cabinet. 560 F.2d at 662, 664. In *Zeidman,* the pistol and shoulder stock were found in the "different drawers of the same dresser." 444 F.2d at 1053.

**10.** The *Kent* court's interpretation of *Thompson/Center Arms* focused on two factual situations described in the opinion which would constitute a "making" of a "firearm" subject to the NFA. 175 F.3d at 876. The first situation is the "paradigm" situation, where the "aggregation of a set of parts [ ] could only be used to assemble a 'firearm' for purposes of the NFA." *Id.* (citing *Thompson/Center Arms Co.,* 504 U.S. at 510–13, 112 S.Ct. 2102). The second situation, which the *Kent* court opined as the one closest to its facts, was the "near-paradigm" situation. *Id.* at 877. In the "near-paradigm" situation, the defendant "would be packaging a complete gun other than a 'firearm' together with a 'further part or parts that would have no use in association with the gun except to convert it to a firearm.'" *Id.* (quoting *Thompson/Center Arms Co.,* 504 U.S. at 512–13, 112 S.Ct. 2102). In *Kent,* the court found that the facts were more analogous to the near-paradigm situation because the short-barreled receiver could quickly and easily convert the Colt AR–15 to an illegal firearm, and that the short barrel had no other purpose. *Id.*

principals from *Thompson/Center Arms, Kent, Woods,* and *Zeidman* provide guidance in this situation. Second, the argument for finding that an already assembled rifle is subject to the NFA is stronger than the argument finding that an unassembled rifle is subject to the statute because an assembled rifle can more easily be converted into a "firearm" by undoing the two parts of the barrel than by assembling a firearm by locating and retrieving additional component parts to add to an existing barrel. This rifle that is already assembled can be converted into a "firearm" faster than a rifle whose component parts are strewn about an apartment or in different drawers of the same dresser. The fact that Claimant has never done so is irrelevant, as it was in *Kent, Woods,* and *Zeidman.*

In *Kent, Woods,* and *Zeidman,* the critical factor was the defendant's ability to quickly and easily transform the unregulated rifle into a short-barreled "firearm." In addition, *Kent* stated that the rifle was a "firearm" under the NFA because the component part's only purpose was to make such a "firearm." The same can be said about Claimant's Colt AR–15. In order for Claimant to make a "firearm" as defined pursuant to the NFA, Claimant would need only to simply remove the flash suppressor, which was not permanently attached. While neither party states how long it would take Claimant to do this, the parties have stipulated that the two parts of the barrel are attached merely by screwing them together. Further, the only possible outcome if the flash suppressor were removed would be to create a short-barreled "firearm" regulated under the statute.

### III. Conclusion

For the foregoing reasons, Plaintiff, United States, is entitled to judgment as a matter of law that the defendant rifle is subject to forfeiture for a violation of the National Firearms Act ("NFA"), 26 U.S.C. § 5861(d). The barrel length of the defendant rifle does not include the flash suppressor because it is not permanently affixed; therefore, the barrel length is less than sixteen inches, and the rifle is subject to the registration requirements of the NFA. In addition, the ability of Claimant to easily convert the assembled rifle into a short-barreled rifle by removing component parts, *i.e.,* the flash suppressor, supports this court's conclusion that the rifle is a "firearm" under the statute. Accordingly, Plaintiff's motion for summary judgment is GRANTED, and, Claimant's motion for summary judgment is DENIED. The defendant rifle, one Colt AR–15 firearm, serial number TA035524, is hereby forfeited to Plaintiff United States.

IT IS SO ORDERED.